# Alabama Gold Life Insurance Company *v.* Anderson.

*Bill in Equity to Creditor to be Subrogated to the Rights of Surety Holding Mortgage from Principal Debtor.*

1. *Security created by surety; when enures to creditor.*—A security or trust created by the principal debtor for the benefit of his surety, and not limited in terms to the mere personal protection of the latter, is a security or trust for the payment of the debt, and enures to the benefit of the common creditor.

2. *Same; same.*—But, to have this effect, the trust or security must confer on the surety a clear right to appropriate it to the payment of the common debt, and the right to retain it until the debt be paid.

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

On January 7, 1875, F. L. McCain recovered a judgment in the Circuit Court of the United States, at Mobile, against the Southern Life Insurance Co. of Memphis, for the sum of $6,535.56, which judgment shortly thereafter became the property of the Alabama Gold Life Insurance Company. The Southern Life Insurance Company desiring to appeal to the Supreme Court of the United States, applied to T. H. Daughdrill to sign the appeal bond for it. Daughdrill agreed to sign the appeal bond, and did so, making the following agreement, viz : "The said Daughdrill, on his part, agrees to become surety for the said Southern Life Insurance Company in such amount as it may be required or expected to give, to

remove, by writ of error, to the Supreme Court of the United States a certain judgment for the sum of six thousand five hundred and thirty-five 56–100 dollars, recently recovered (besides costs) in the Circuit Court of the United States for the fifth judicial circuit, and southern district of Alabama, in favor of Francis L. McCain, against the said Southern Life Insurance Company, and also to take out a policy of insurance on his own life, or on the life of his wife, if he be uninsurable, in the office of the said Southern Life Insurance Company, and also to furnish within two months from this date to the said Southern Life Insurance Company the application of responsible persons for insurance on the lives of healthy persons to the extent of ten thousand dollars, if practicable; and further, the said Daughdrill agrees to use his influence in promoting the business of the said Southern Life Insurance Company; and the said Southern Life Insurance Company, on its part, agrees to loan to the said Daughdrill, within forty days from this date, the sum of five thousand dollars for the period of one year, at eight per cent. interest per annum, provided the payment of the same is secured by satisfactory mortgage on real estate in the city of Mobile, which is worth twice the amount of the loan, the title to which is satisfactory to the said Southern Life Insurance Company, its officers or agents, entirely free from all other incumbrances. It is further agreed, that in case the said suit should not be decided by the said Supreme Court before the expiration of the year for which said loan is made, then the said Southern Life Insurance Company will continue the said loan upon the same security until said suit is decided by said Supreme Court, and at the same rate of interest.

It is understood and agreed that the interest on said loan is to be paid in advance, annually or semi-annually, as said company may prefer; and it is also agreed the policy of insurance hereinbefore referred to, to be taken out by the said Daughdrill on the life of himself, or of his wife, is to be held by said Southern Life Insurance Company, or for its benefit, as an additional security (besides the mortgage) for the repayment of the proposed loan, until the final payment of such loan. The said Daughdrill further agrees to pay all taxes of whatever description, already due or that may become due, on the property to be mortgaged as above provided, and to pay all premiums that may become due on the policy of insurance to be issued on his own life, or the life of his wife, as above agreed, during the continuance of the loan above agreed upon. In case of failure to pay said taxes or said premiums, the aforesaid Southern Life Insurance Company be authorized to foreclose the mortgage on the said property."

Daughdrill obtained the money mentioned in the agreement, and the mortgage therefor was executed and delivered by him on February 25th, 1875.   On February 11th, 1875, a policy on the life of Mrs. Daughdrill was taken out in the Southern Life Insurance Company, by Daughdrill.   The judgment was affirmed in the Supreme Court of the United States, and an execution issued thereon, was returned " no property found," as to all the obligors on the bond.   Pending the appeal, on January 31, 1876, the Southern Life Insurance Company was adjudicated a bankrupt.   In August, 1878, Daughdrill was adjudicated a voluntary bankrupt.   Daughdrill being indebted to James Bond, as administrator of Poe, deceased, and to Anderson & Bond, made a deed to W. S. Anderson, as trustee, to secure the payment of these debts on the main body of lands described in the mortgage deed from Daughdrill to the Southern Life Insurance Company. The Southern Life Insurance Company filed its bill alleging the facts above recited, and shortly after its bankruptcy the assignees, under a decree of the District Court of the United States, at Memphis, Tennessee, sold the note and mortgage to the Alabama Gold Life Insurance Company, and the title was made it through the president of the Southern Life Insurance Company.   The bill was then amended by setting forth the facts of the sale and purchase, and making the agreement, the mortgage and the mortgage notes, exhibits to the bill, and prayed a foreclosure and sale to satisfy the said notes.   Mrs. Daughdrill, on whose life the company had issued a policy for $5,000, died in January, 1876.   The Chancellor decreed that the debts secured by the deed to Anderson, trustee for Bond, as administrator, and to Anderson & Bond, were superior in equity to the judgment, and decreed that the complainant was entitled only to the excess of the mortgage debt over the death claim, which operated as a payment of the mortgage to that amount.   This ruling is assigned as error.

OVERALL & BESTOR, for appellant.—When Daughdrill signed the bond he became a surety for the principal debtor, the Southern Life Insurance Company, and we invoke the principle that securities received by the surety from the principal debtor, either for the payment of the common debt, or for the indemnity of the surety against loss because of his liability, are regarded as created for the protection of the debt, and equity will compel the execution of the trust. Daughdrill stipulated for at least partial indemnity.   He received the company's money in connection with his becoming surety.   Under the agreement he could keep the money

as long as his liability on the bond existed, if he did not violate any other stipulation in the agreement. The general rule is, that where a surety or person standing in the situation of a surety for the payment of a debt, receives a security for his indemnity, and to discharge such indebtedness, the principal creditor is in equity entitled to the full benefit of that security, and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence. The authorities place the principle upon the ground, that as the security is a trust for the better securing the debt, it attaches to it, and hence it is that it may be made available by the creditor, although unknown to him.— Brandt on Guaranty & Suretyship, 380, § 282 ; 8 Ala. 866.

BRICKELL, C. J.—The general principle on which appellant relies in support of the remedy it seeks to enforce, is well known and familiar to courts of equity, and has been in this court allowed its largest operation. The principle is, that if a principal debtor creates a security, or trust, for the indemnity of his surety, not in terms limited to the mere personal protection of the surety, it is a security or trust for the payment of the debt enuring to the benefit of the common creditor. To bring a case within the operation of the principle, there must, of course, be a trust, or security created, conferring on the surety the clear right to appropriate it to the payment of the common debt, and the right to retain it until the debt is paid. The agreement between Daughdrill, the surety, and the Southern Life Insurance Company, the principal debtor, cannot be construed as creating a trust or security for the payment of the common debt, or for the mere personal protection of Daughdrill as surety. Reading that agreement by its terms alone, or in the light of the attending circumstances, by the loan of money to Daughdrill, and the contemporaneous mortgage to secure its payment, no other than the simple relation of debtor and creditor was created, or contemplated. True, in the agreement it is recited, as one of the inducements to the company to make the loan, that Daughdrill had agreed to become surety on the writ of error bond. This is, however, in connection with the recital of other inducements—the taking from the company a policy of insurance on his own life, or that of his wife ; the procuring, within two months, insurance on the lives of healthy persons, to the extent of ten thousand dollars, if practicable, and the use of his influence in promoting the business of the company. The writ of error bond, and the agreement, were executed cotem-

poraneously. The loan was made subsequently, after Daughdrill's liability as surety had been incurred. Now, if Daughdrill had declined taking the policy of insurance on his own life, or that of his wife ; or had declined to furnish the insurance promised on the lives of healthy persons, it being practicable ; or had declined to exercise his influence in promoting the business of the company, without any want of good faith, without a violation of confidence reposed, the company could have declined making the promised loan. Or, if the titles to the real estate, which was to be mortgaged as security for the loan, were not satisfactory, or the real estate was not worth twice the amount of the loan, the company, keeping within the agreement, could have refused to make the loan, though Daughdrill's liability as its surety was existing, and from it he was without remedy to demand relief. The company, doubtless, was influenced in making the loan, by the fact that Daughdrill had become its surety on the writ of error bond. It may have been more inclined for that reason to accommodate him with a loan, than it would have been if that relation had not existed. The mere inducements to parties to contract, cannot vary the relations the contract creates, nor can they stamp upon the contract a nature and character inconsistent with its terms, and the obligations arising from them.

. The company was very carefully keeping in view their relation and rights as creditors, and stipulating for security in that relation. It was not indemnity to Daughdrill for the liability he had incurred as surety, or security for the debt if the judgment was affirmed, or the creation of a fund for its payment, which was contemplated, or which was deemed necessary. There is a stipulation for the continuance of the loan beyond the period of one year, until the decision of the cause in which the writ of error had been taken, but that is dependent on conditions. The continuance was not a matter of right in Daughdrill, unless he kept down the interest, paid the premiums on the policy of insurance he had promised to take, and kept down the taxes on the mortgaged property.

The test whether a trust or security was created for the payment of the debt, is, whether Daughdrill could have claimed to retain the loan merely because of his liability as surety. Before paying the common debt, he had no remedy against the principal, and no right to withhold payment of the debt due from him.—*Standifer v. White*, 9 Ala. 527. The agreement would not have furnished cause for resisting the exercise of the power of sale contained in the mortgage, nor would it have afforded defense to a bill for foreclosure. The

common debt being unpaid, was not of present inquiry, but of prospective and contingent inquiry only; and this could not have afforded him an equity to retain his own debt, until it was removed. There is no feature of the case, as it is presented—no view of the rights and remedies of Daughdrill, which would authorize the conversion of the relation of the parties from that which the agreement so clearly imports, of debtor and creditor, into that of trustee and *cestui que trust*, and that is the relation which must exist, or the claim of the appellant cannot be supported. It was not that relation, with its rights and duties, the parties contemplated: Daughdrill was the debtor of the Southern Life Insurance Company, for money loaned. The company became his debtor, when, by the death of his wife, the insurance policy became payable. By the terms of the policy, the debt to Daughdrill was to be applied to the payment of his debt to the company. Whether the application was made or not is immaterial; for, in a court of equity, it will be regarded as made—that being considered as done, which ought to have been done. We find no error in the record, and the decree is affirmed.